[Cite as *In re K.R.*, 2011-Ohio-5694.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

IN THE MATTER OF: K.R.          :

          :      C.A. CASE NO. 2011 CA 39

          :      T.C. NO. 2011-117

          : (Civil appeal from Common Pleas Court, Juvenile Division)

          :

          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___4th___ day of ___November___, 2011.

. . . . . . . . . .

ANDREW R. PICEK, Atty. Reg. No. 0082121, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
      Attorney for Plaintiff-Appellee

THEODORE D. VALLEY, Atty. Reg. No. 0070867, 854 East Franklin Street, Centerville, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Appellant S.R. (Mother) appeals from a judgment of the Clark

County Court of Common Pleas, Juvenile Division, which denied her motion to place her child in the temporary custody of her cousin or alternatively with either of the two friends that she recommended. For the following reasons, the judgment of the trial court will be Affirmed.

I

{¶ 2} On January 27, 2011, Family and Children's Services of Clark County (FCSCC) filed a complaint alleging that Mother's newborn child, K.R., was an abused and dependent child. A shelter care hearing was held, after which K.R. was placed in the temporary shelter care of FCSCC, and a Guardian ad Litem (GAL) was appointed.

{¶ 3} In February, 2011, the GAL filed a report recommending that temporary custody of K.R. be granted to FCSCC. The following month, the GAL filed a more detailed report, recommending that FCSCC have temporary custody of K.R. and that she remain in her current foster home. On March 15, 2011, K.R. was found to be a dependant child, and she was placed in the temporary custody of FCSCC.

{¶ 4} In April, 2011, Mother filed a motion requesting that K.R. be placed in the temporary custody of either Mother's cousin Jennifer R., or one of her friends Angela K. or Amanda V., all of whom had passed home studies conducted by FCSCC, and all of whom she alleged were

appropriate and willing care givers for her child.[1]  At this time the GAL also filed a supplemental report.

{¶ 5}  The GAL filed an additional report prior to the May 9, 2011 hearing on Mother's motion.  The trial court concluded that it was in the child's best interest to remain in the temporary custody of FCSCC and to stay in her current foster home rather than being moved to any of the homes that Mother had recommended.  From this decision, Mother appeals.

II

{¶ 6}  Mother's First Assignment of Error:

{¶ 7}  "THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTIONS."

{¶ 8}  Mother's Second Assignment of Error:

{¶ 9}  "THE TRIAL COURT'S DECISION REGARDING K.R.'S BEST INTERESTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 10} Mother argues that the trial court abused its discretion in denying her motion for placement of K.R. with one of the three individuals that she proposed because the court's conclusion that it was in K.R.'s best interest to remain in the same foster home rather than being moved into one of those three homes was against the manifest

---

[1]For privacy reasons, we will only use first names and an initial.

weight of the evidence.

{¶ 11} "If a child is adjudicated an abused, neglected, or dependent child, the court may  [c]ommit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home, or in any other home approved by the court."  R.C. 2151.353(A)(2).  "In choosing among the alternatives, the best interest of the child is the court's primary consideration.  *In re L.C.,* Clark App. No. 2010 CA 90, 2011-Ohio-2066, ¶13, citations omitted.

{¶ 12} The trial court retains jurisdiction over the child until she is eighteen years old, during which time the court may amend its dispositional order in compliance with R.C. 2151.42.  R.C. 2151.353(E)(1) and R.C. 2151.417(B).  When a trial court reviews the child's placement or custody, the court "shall determine the appropriateness of any agency actions, the safety and appropriateness of continuing the child's placement or custody arrangement, and whether any changes should be made with respect to the child's * * * placement or custody arrangement."  R.C. 2151.417(A).  In considering the potential modification or termination of a dispositional order issued under R.C. 2151.353, the court must consider the best interest of the child. R.C. 2151.42(A).

{¶ 13} A trial court necessarily has substantial discretion in weighing the considerations involved in making the determination regarding a child's best interest, and the court's determination will not be reversed absent an abuse of that discretion. *In re K.H.,* Clark App. No. 2009-CA-80, 2010-Ohio-1609, ¶66. A trial court abuses its discretion when its decision is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 14} "In assessing a manifest weight challenge in the civil context, we will not reverse a judgment as being against the manifest weight of the evidence where the judgment 'is supported by some competent, credible evidence going to all the essential elements of the case.'" *In re S.S.,* Montgomery App. No. 22980, 2008-Ohio-294, ¶47, quoting *Gevedon v. Ivey,* 172 Ohio App.3d 567, 2007-Ohio-2970, ¶54, in turn quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279. "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the trial judge had an opportunity 'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' * * * 'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence

submitted before the trial court. A finding of an error in law is a legitimate grounds for reversal, but a difference of opinion is not.'" Id. at ¶48, quoting *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, ¶24.

{¶ 15} At the May 9, 2011 hearing on Mother's motion, the trial court heard testimony from Mother, two FCSCC workers, the GAL, Jennifer R., Amanda V., Angela K., and Tommie C. (the legal guardian of one of Mother's other children, and sister to Angela K.). The trial court also had before it the safety audit reports for the three homes recommended by Mother and the four GAL reports.

{¶ 16} The FCSCC case worker testified that there were no major safety concerns with any of the three homes suggested by Mother and suggested that K.R. be placed in one of those homes. The primary advantage of any of the homes was that the three potential care givers were all willing and able to facilitate the development of a relationship between K.R. and her half-brother, as well as with other relatives. However, no visitations had been established between any of the three recommended care givers and K.R. during the first few months of her life.

{¶ 17} The GAL's reports indicate that she and the case worker visited the homes of Jennifer R., Amanda V., and Angela K. Jennifer was not present for the first scheduled meeting; she called later in the day and advised the case worker that she could not keep the scheduled

interview because her son was home. A later visit was scheduled at which time the GAL learned that Jennifer had lived in their home, which was in need of repairs, for ten years. Jennifer is unemployed and supports her family with child support money that she receives for her three children and food stamps. Jennifer had a previous relationship with a man who had recently been released from prison. When asked about the relationship, "she became very agitated and refused to give CASA any information about him." Jennifer has a 2006 conviction for driving without a license.

{¶ 18} The GAL described Amanda V.'s home as dirty, unsafe, and overcrowded, without the financial resources necessary to be able to add K.R. to the household. Amanda was unemployed at that time and supported her family with welfare and the social security benefits of her seven-year-old, whose father died. By the time of the May 9, 2011, hearing, however, Amanda reported that she was employed. Amanda had prior involvement with FCSCC for a neglect screening in 1997. In 2000, she was charged with two counts of child endangering and was convicted of one count of disorderly conduct.

{¶ 19} The GAL reported that Angela K. works part-time. Although Angela's five-bedroom home is large enough to have room for K.R., the baby's room would be located far from Angela's. There was also some concern that while Angela's bedroom contained a bed, the other four

bedrooms had only mattresses on the floor. More importantly, however, neither of Angela's adult roommates was home, so they were unable to sign releases of information. By the time of the hearing, it appears that one of the adult roommates and her two children had moved out of the home. In 2000, Angela was charged with failure to display a dog license, two counts of failure to control her dog, and failure to obey a health department ordinance; she was found guilty by waiver.

{¶ 20} In all four of the GAL's written reports, she recommended that K.R. be in the temporary custody of FCSCC and remain in the foster home in which she had been placed since birth, where she was doing very well. The GAL expressed concern that while both Amanda and Angela explained that they wanted to keep K.R. out of foster care, neither of the women expressed a desire to "love, nurture, and provide the best life for" K.R. Nor had either woman "had any kind of relationship with [Mother] or her family for years."

{¶ 21} In its decision, the trial court found that "while any of the three (3) proposed custodians may be [able] to meet the needs of the child, the child's best interest would be served by remaining in the temporary custody of FCSCC with placement in the current foster home." The court explained that the child is an infant who "has no relationship with her mother, father, or any relatives. * * * The only family that the child knows is her foster parents."

{¶ 22} The trial court further stated that "it is agreed by all parties that the child is safe, secure, and well cared for in her current placement. Her foster parents have provided for her many needs. The testimony clearly indicates that the child is well served and blessed to be in a loving and appropriate foster home, at this time in her life. There is no justification offered to remove the child from placement where she is well cared for. It is clearly in the best interest of this child to remain in the home, which she has known, since her removal from the home of her parents. It is not in her best interest to be removed from the only 'family' that she knows, and to place her with people that have had no interaction or relationship with her. Simply yanking a child from the only home that she knows, to place her with a friend of the mother, would not serve her needs or be in her best interest."

{¶ 23} Thus, the court concluded that "the motion of the mother for an order granting legal custody of her child to strangers and/or distant relatives is not in the best interest of the child. Considering all relevant factors the child is well served by remaining in the home where she resides, and remains in her best interest to stay there."

{¶ 24} The trial court's decision was based upon competent, credible evidence; the decision was not against the manifest weight of the evidence, and the trial court did not abuse its discretion in concluding that it was in K.R.'s best interest to remain in the temporary custody of

FCSCC and to stay in the same foster home where she had lived since birth, and where she was thriving, rather than to be moved to the home of a relative or family friend with whom she had experienced no previous contact.

{¶ 25} Mother's first and second assignments of error are overruled.

III

{¶ 26} Mother's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Andrew R. Picek
Theodore D. Valley
Hon. Joseph N. Monnin